ROBERTS, Justice.
This cause is before us on direct appeal to review an order from the Circuit Court of Duval County granting appellee’s motion to dismiss an information charging him with violating Section 847.04, Florida Statutes, F.S.A. (1971), and Section 843.01 (1971), and holding Section 847.04 uncon *245 stitutional thereby vesting jurisdiction in this Court pursuant to Article V, Section 3(b)(1), Florida Constitution, as amended 1973, F.S.A.
Appellee was informed against for the use of profane, vulgar, and indecent language, to-wit: “mother f-,” in a public place so as to be heard by others, contrary to the provisions of Section 847.04, Florida Statutes, and for resisting arrest with violence contrary to the provisions of Section 843.01, Florida Statutes, F.S.A. Pursuant to Rule 3.190(b), Florida Rules of Criminal Procedure, 33 F.S.A. appellee moved the trial court for an order dismissing the first and second counts of the information and stated as grounds therefor that the allegations of the information are so vague and indefinite and provide so little notice of the offenses sought to be charged that defendant is denied due process of law and that the statutes upon which the first and second counts of the information are based are so vague and indefinite that they violate the due process provisions of the Constitutions of the State of Florida and of the United States.
Having heard oral argument, the trial judge entered an order granting appellee’s motion to dismiss the information charging him with violating Fla.Stat. § 847.04, F.S. A. (1971) and Fla.Stat. § 843.01, F.S.A. (1971). The trial court found Fla.Stat. § 847.04, F.S.A., which provides,
“Whoever, having arrived at the age of discretion, uses profane, vulgar and indecent language, in any public place; or upon the private premises of another, or so near thereto as to be heard by another, shall be guilty of a misdemeanor of the second degree, punishable as provided in § 775.082 or § 775.083; but no prosecution for any such offense shall be commenced after twenty days from the commission thereof.” e. s.
to be unconstitutional on its face as contrary to the guarantees of the First, Fifth and Fourteenth Amendments to the United States Constitution. The trial court stated in its order:
“Said statute by its language seeks only to punish spoken words. The statute can stand therefore only if it is limited in application to spoken words that have a direct tendency to cause acts of violence by the person to whom, individually, the words are addressed. See Chaplinsky v. New Hampshire, 315 U.S. 568 [, 62 S.Ct. 766, 86 L.Ed. 1031] (1942); Gooding v. Wilson, 40 U.S.L.W. 4329 [405 U.S. 518, 93 S.Ct. 1103, 31 L.Ed.2d 408] (March 23, 1972). To uphold a statute that does otherwise would invite law enforcement officials to suppress constitutionally protected conduct in the mistaken belief that such conduct is prohibited by the statute in question. The United States Supreme Court has consistently refused to uphold' a penal statute when conduct protected by the First Amendment may be deemed to fall within the terms of its proscription. See, Edwards v. South Carolina, 372 U.S. 229 [, 83 S.Ct. 680, 9 L.Ed.2d 697] (1963); Stromberg v. California, 283 U.S. 359 [, 51 S.Ct. 532, 75 L.Ed. 1117] (1931); Cox v. Louisiana, 379 U. S. 536 [, 85 S.Ct. 476, 13 L.Ed.2d 487] (1965); Thornhill v. Alabama, [sic] 310 U.S. 88 [, 60 S.Ct. 736, 84 L.Ed. 1093] (1940); Winters v. New York, 333 U.S. 507 [, 68 S.Ct. 665, 92 L.Ed. 840] (1948).
“Examples of clearly protected conduct which would appear to violate the statute in question may be readily imagined. Since Fla.Stat. § 847.04 (1971) purports to prohibit activity which merits First Amendment protection, it is invalid on its face.

“The crucial terms of Fla.Stat. § 847.04 (1971) — ‘Profane, Vulgar, and Indecent’ do not provide the fair warning to the public that due process requires.”
Relative to count two of the information, the trial court concluded:
“Defendant is charged with violating Fla.Stat. § 843.01 (1971) in that he resisted arrest for an alleged violation of Fla.Stat. § 847.04 (1971). Inasmuch as *246 this court holds that Fla.Stat. § 847.04 is unconstitutional it thus follows that defendant’s arrest was unlawful and he can not be held criminally liable for resisting an unlawful arrest. See, Russo v. State, 270 So.2d 428 (Fla. 4th DC A 1972); Roberson v. State, 43 Fla. 166, 29 So. 535 (1901); Waller v. City of St. Petersburg, 245 So.2d 685 (Fla.2d DCA 1971); 3 Fla.Jur., Arrest § 39.”
We disagree with the trial court and find that the statutory provision in question is neither impermissibly vague nor unnecessarily overbroad, nor does it violate the First Amendment to the Constitution of the United States. The right of free speech as guaranteed by the First Amendment to the Constitution of the United States is not an absolute right. Schenk v. United States, 249 U.S. 47, 39 S.Ct. 247, 63 L.Ed. 470 (1919); Whitney v. California, 274 U.S. 357, 47 S.Ct. 641, 71 L.Ed. 1095 (1927); Near v. Minnesota, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931); Dejonge v. Oregon, 299 U.S. 353, 57 S.Ct. 255, 81 L.Ed. 278 (1937); Cantwell et al. v. Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940); Chaplinsky v. New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). Recognizing that freedom of speech is among the fundamental personal rights and liberties which are protected by the Fourteenth Amendment from invasion by state action,[1] we are also fully cognizant that obscene speech is not guaranteed by either the Federal or Florida Constitutions. Chaplinsky v. New Hampshire, supra, Nixon v. State, 178 So.2d 620 (Fla.App.1965), the Supreme Court of the United States denied certiorari at 385 U.S. 853, 87 S.Ct. 97, 17 L.Ed.2d 81 (1966). In Chaplinsky, supra, the Supreme Court upheld the constitutionality of a state law similar to the statute in question, sub jud-ice, against charges of vagueness and violation of the First and Fourteenth Amendment guarantee of freedom of speech. That statute provided:
“No person shall address any offensive, derisive or annoying word to any other person who is lawfully in any street or other public place, nor call him by any offensive or derisive name, nor make any noise or exclamation in his presence and hearing with intent to deride, offend or annoy him, or to prevent him from pursuing his lawful business or occupation.”
Therein, the court announced :
“Allowing the broadest scope to the language and purpose of the Fourteenth Amendment, it is well understood that the right of free speech is not absolute at all times and under all circumstances. There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which has never been thought to raise any Constitutional problem. These include the lewd and obscene, the profane, the libelous, and the insulting or 'fighting’ words —those which by their very utterance inflict injury or tend to incite an immediate breach of the peace. It has been well observed that such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality. ‘Resort to epithets or personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution, and its punishment as a criminal act would raise no question under that instrument.’ Cantwell v. Connecticut, 310 U.S. 296, 309, 310, 60 S.Ct. 900, 84 L.Ed. 1213.

“On the authority of its earlier decision, the state court declared that the statute’s purpose was to preserve the public peace, no words being ‘forbidden except such as have a direct tendency to cause acts of violence by the persons to whom, individually, the remark is addressed.’ It *247 was further said: ‘The word “offensive” is not to be defined in terms of what a particular addressee thinks. The test is what men of common intelligence would understand would be words likely to cause an average addressee to fight. . . . The English language has a number of words and expressions which by general consent are “fighting words” when said without a disarming smile. . . . Such words, as ordinary men know, are likely to cause a fight. So are threatening, profane or obscene revilings. Derisive and annoying words can be taken as coming within the purview of the statute as heretofore interpreted only when they have this characteristic of plainly tending to excite the addressee to a breach of the peace. . The statute, as construed, does no more than prohibit the face-to-face words plainly likely to cause a breach of the peace by the addressee, words whose speaking constitutes a breach of the peace by the speaker — including “classical fighting words”, words in current use less “classical” but equally likely to cause violence, and other disorderly words, including profanity, obscenity and threats.’
“We are unable to say that the limited scope of the statute as thus construed contravenes the Constitutional right of free expression. It is a statute narrowly drawn and limited to define and punish specific conduct lying within the domain of state power, the use in a public place of words likely to cause a breach of the peace. Cf. Cantwell v. Connecticut, 310 U.S. 296, 311, 60 S.Ct. 900, 84 L.Ed. 1213; Thornhill v. Alabama, 310 U.S. 88, 105, 60 S.Ct. 736, 84 L.Ed. 1093. This conclusion necessarily disposes of appellant’s contention that the statute is so vague and indefinite as to render a conviction thereunder a violation of due process. A statute punishing verbal acts, carefully drawn so as not unduly to impair liberty of expression, is not too vague for a criminal law. Cf. Fox v. Washington, 236 U.S. 273, 277, 35 S.Ct. 383, 59 L.Ed. 573.”
An ordinance containing similar language as that of Section 847.04, Florida Statutes, F.S.A. was upheld in Nixon v. State, supra, wherein the court concluded that the ordinance under scrutiny was not unduly broad nor unconstitutionally restrictive of the right of free speech.
This Court in City of St. Petersburg v. Waller, 261 So.2d 151 (1972), certiorari denied by Supreme Court of the United States, 409 U.S. 989, 93 S.Ct. 312, 34 L.Ed.2d 256 (1972), held that the words “verbal abuse” were not unconstitutionally vague and stated the test for the constitutionality of a statute or ordinance of the type here involved to be whether the language “ . . .is sufficiently precise to describe an offense so as to give fair warning to the citizen that certain speech is prohibited.”
Recently, in Witherspoon v. State of Florida; Little v. State of Florida, 278 So.2d 611 (Fla.1973), we reaffirmed our holding in Chesebrough v. State, 255 So.2d 675 (Fla.1971), and held that the words “unnatural and lascivious” or “lewd and lascivious” are of such a character that an ordinary citizen can easily determine what character of act is intended and are secure from constitutional attack.
We have held that the test of vagueness of a statute is whether the an-guage thereof conveys a sufficiently definite warning as to the proscribed conduct when measured by common understanding and practice. Zachary v. State, 269 So.2d 669 (Fla.1972); Newman v. Carson, 280 So.2d 426 (Fla.1973). To make a statute sufficiently certain to comply with constitutional requirements, it is not necessary that it furnish detailed plans and specifications of the acts or conduct prohibited. Smith v. State, 237 So.2d 139 (Fla.1970), Orlando Sports Stadium, Inc. v. State ex rel. Powell, 262 So.2d 881, 884 (Fla.1972). In Brock v. Hardie, 154 So. 690, 694 (1934), this Court explained:
“Whether the words of the Florida statute are sufficiently explicit to inform *248 those who are subject to its provisions what conduct on their part will render them liable to its penalties is the test by which the statute must stand or fall, because, as was stated in the opinion above mentioned, ‘a statute which either forbids or requires the doing; of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law.’
“Such seems to be the test approved by the Supreme Court of the United States. Citation of authorities as to what may be considered the exact meaning of the phrase ‘so vague that men of common intelligence must necessarily guess at its meaning,’ so that certain conduct may be considered within or outside the true meaning of that phrase, or what language of a statute may lie within or without it, would be of little aid to us.
“We must apply our own knowledge with which observation and experience have supplied us in determining whether words employed by the statute are reasonably clear or not in indicating the legislative purpose, so that a person who may be liable to the penalties of the act may know that he is within its provisions or not.”
We acknowledge that certainty is all the more essential when vagueness could induce individuals to forego their rights of speech, press and association for fear of violating an unclear law. Scull v. Virginia, 359 U.S. 344, 79 S.Ct. 838, 3 L.Ed.2d 865 (1959); Ashton v. Kentucky, 384 U.S. 195, 86 S.Ct. 1407, 16 L.Ed.2d 469 (1965); Tornillo v. The Miami Herald Publishing Company, Fla., 287 So.2d 78, filed July 18, 1973. Pursuant to the requisites of due process, the statute in question sub judice is sufficiently explicit to withstand the test of vagueness and the charge of overbreadth to inform those who are subject to its provisions as to what conduct on their part will render them liable to the penalties of this law.
The enactment of Section 847.04, Florida Statutes, F.S.A. is a valid exercise of the state’s police power and may reasonably be construed as expedient for the protection of public safety, public welfare and public morals, in order to maintain public decency and order. See, Chaplinsky v. New Hampshire, supra; Sweat v. Turpentine & Rosin Factors, Inc., 112 Fla. 428, 150 So. 617, 618 (1933); Scarborough v. Newsome, 150 Fla. 270, 7 So.2d 321 (1942); Eelbeck Milling Company v. Mayo, 86 So.2d 438, 439 (Fla.1956); Larson v. Lesser, 106 So.2d 188 (Fla.1958); Zabel v. Pinellas County Water and Navigation Control Authority, 171 So.2d 376 (Fla.1965); Lieberman v. Marshall, 236 So.2d 120 (Fla.1970). This statutory provision does not abridge the constitutional right of liberty of speech. Section 4 of the Declaration of Rights of the Constitution of Florida provides in pertinent part:
“Freedom of speech and press. — Every person may speak, write and publish his sentiments on all subjects but shall be responsible for the abuse of that right. No law shall be passed to restrain or abridge the liberty of speech or of the press.” ... 1
This court in Stephens v. Stickel, 146 Fla. 104, 200 So. 396 (1941), stated that, “The organic command that no law shall restrain or abridge the liberty of speech * * * does not by its terms or intendments contemplate that the exercise of such liberty * * * shall be superior to reasonable duly authorized regulations * * *.” See Lieberman v. Marshall, supra. Justice Adkins in Lieberman v. Marshall, supra, set forth an excellent analysis of the case law of this state relating to the conflict between actions by public officials and citizens attempting to exercise constitutionally protected liberties of speech and the bal *249 anced policies which have evolved. Therein, he explained:
“Liberty of speech must be respected by public agents, even if the speech is angry, critical, adverse, or threatens to bring about economic harm, as in union activity. Unreasonable or improper infringements of this liberty cannot stand. State ex rel. Wilson v. Russell, 146 Fla. 539, 1 So.2d 569 (1941); Pittman v. Nix, 152 Fla. 378, 11 So.2d 791 (1943); State ex rel. Singleton v. Woodruff, 153 Fla. 854, 13 So.2d 704 (1943); Johnson et al. v. White Swan Laundry, Inc., 41 So.2d 874 (Fla.1949). The exercise of liberty of speech in specific situations may be required to yield to valid state or local interests springing from public necessity. Smith v. Ervin, 64 So.2d 166 (Fla.1953); State ex rel. Nicholas v. Headley, 48 So.2d 80 (Fla.1950); Adams v. Sutton, 212 So.2d 1 (Fla.1968); Ex Parte Hawthorne, 116 Fla. 608, 156 So. 619 (1934); Satan Fraternity et al. v. Board of Public Instruction for Dade County et al., 156 Fla. 222, 22 So.2d 892 (1945); Oshins v. York, 150 Fla. 690, 8 So.2d 670 (1942); Jones v. Board of Control, 131 So.2d 713 (Fla.1961); State v. Ucciferri, 61 So.2d 374 (Fla.1952); Tampa Times Co. et al. v. City of Tampa, 29 So.2d 368 (Fla.1947); In re Hayes, 72 Fla. 558, 73 So. 362 (1916); Nixon v. State, 178 So.2d 620 (Fla.App. 3, 1965). Liberty of speech also must be balanced against other state constitutional policies, such as those involved in our defamation cases; or the right-to-work law. Local Union No. 519 of United Assn, of Journeymen and Apprentices of Plumbing and Pipefitting Industry of United States and Canada v. Robertson, 44 So.2d 899 (Fla.1960). Not all places are suitable for expression of grievances or opinion under liberty of speech. Stephens et al. v. Stickel et al., 146 Fla. 104, 200 So. 396 (1941). Also see Adderly v. State of Florida, 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149, rehearing denied 385 U.S. 1020, 87 S.Ct. 698, 17 L.Ed.2d 559 (1966); National Association for the Advancement of Colored People v. Webb’s City, 152 So.2d 179 (Fla.App. 2, 1963). An injunction is not justified because the words spoken may be critical or unpleasant, or because on previous occasions there were improper incidents or confrontations if the incident subject to the order was lawful and orderly. Moore et al. v. City Dry Cleaners & Laundry, Inc., 41 So.2d 865 (Fla.1949).”
Counsel for appellee and the trial judge rely with much emphasis on the recent decision of the Supreme Court of the United States in Gooding v. Wilson, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972), in which that court held a Georgia statute which provided:
“Any person who shall without provocation, use to or of another, and in his presence . . . opprobrious words or abusive language, tending to cause a breach of the peace . . . shall be guilty of a misdemeanor.”
to be unconstitutionally vague and over-broad in violation of the First and Fourteenth Amendments since the state courts of Georgia had not by construction, limited the proscription to fighting words which by their utterance tend to incite an immediate breach of the peace. As we noted in City of St. Petersburg v. Waller, 261 So.2d 151 (Fla.1972), the Supreme Court of the United States in Gooding reaffirmed its adherence to the doctrine of Chaplinsky v. New Hampshire, supra. In Gooding, the Supreme Court opined,
“The constitutional guarantees of freedom of speech forbid the States from punishing the use of words or language not within ‘narrowly limited classes of speech.’ Chaplinsky v. New Hampshire, 315 U.S. 568, 571, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). Even as to such a class, however, because ‘the line between speech unconditionally guaranteed and speech which may legitimately be regulated, suppressed, or punished is finely drawn,’ Speiser v. Randall, 357 U.S. 513, 523, 78 S.Ct. 1332, 2 L.Ed.2d 1460 *250 (1958), ‘[i]n every case the power to regulate must be so exercised as not, in attaining a permissible end, unduly to infringe the protected freedom,’ Cantwell v. Connecticut, 310 U.S. 296, 304, 60 S. Ct. 900, 84 L.Ed. 1213 (1940). In other words, the statute must be carefully drawn or be authoritatively construed to punish only unprotected speech and not be susceptible of application to protected expression. ‘Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity.’ NAACP v. Button, supra, 371 U.S. 415, at 433, 83 S.Ct. 328, 9 L.Ed.2d 405.”
The court in Gooding pointed out that authoritative construction by Georgia courts could have saved the statute in question and stated:
“Section 26-6303 punishes only spoken words. It can therefore withstand ap-pellee’s attack upon its facial constitutionality only if, as authoritatively construed by the Georgia courts, it is not susceptible of application to speech, although vulgar or offensive, that is protected by the First and Fourteenth Amendments, Cohen v. California, 403 U.S. 15, 18-22, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971); Terminiello v. Chicago, 337 U.S. 1, 4-5, 69 S.Ct. 894, 93 L.Ed. 1131 (1949). Only the Georgia courts can supply the requisite construction, since of course ‘we lack jurisdiction authoritatively to construe state legislation.’ United States v. Thirty-Seven Photographs, 402 U.S. 363, 369, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971). It matters not that the words appellee used might have been constitutionally prohibited under a narrowly and precisely drawn statute. At least when statutes regulate or proscribe speech and when ‘no readily apparent construction suggests itself as a vehicle for rehabilitating the statutes in a single prosecution,’ Dombrowski v. Pfister, 380 U.S. 479, 491, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), the transendent value to all society of constitutionally protected expression is deemed to justify allowing ‘attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity,’ id., at 486; see also Baggett v. Bullitt, 377 U.S. 360, 366, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964); Coates v. City of Cincinnati, 402 U.S. 611, 616, 91 S.Ct. 1686, 29 L.Ed.2d 214; id., at 619-620 (White, J., dissenting) (1971); United States v. Raines, 362 U.S. 17, 21-22, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960); NAACP v. Button, 371 U.S. 415, 433, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963). This is deemed necessary because persons whose expression is constitutionally protected may well refrain from exercising their rights for fear of criminal sanctions provided by a statute susceptible of application to protected expression.”
 This court has reiterated on several occasions the fundamental principle that this court has the duty, if reasonably possible, and consistent with constitutional rights, to resolve all doubts as to the validity of a statute in favor of its constitutionality and if possible a statute should be construed so as not to conflict with the Constitution.[2]
The Supreme Court of the United States has announced that every presumption should be indulged in favor of the validity of a statute, and a statute should be considered in the light of the principle that *251 the state is primarily the judge of regulations in the interest of public safety and welfare. Gitlow v. People of New York, 268 U.S. 652, 45 S.Ct. 625, 69 L.Ed. 1138 (1925).
The language sought to be proscribed by Section 847.04, Florida Statutes, F.S.A., falls within the narrowly limited classes of speech described by the Supreme Court in Chaplinsky which “ . . . include the lewd and obscene, the profane, the libelous, and the insulting or ‘fighting words’ — those which by their utterance inflict injury or tend to incite an immediate breach of the peace.” In accordance with the policy of this Court to construe a statute when possible in a manner supportive, of its constitutionality, we find that the language sought to be prohibited by Section 847.04, Florida Statutes, F.S.A., is that which would necessarily incite a breach of the peace. The Supreme Court in Chap-linsky quoted with approval the excerpts from the lower court’s decision to the effect that the English language contains many words and expressions which by general consent are “fighting words” — -words that could induce a breach of the peace. Profane and obscene revilings are included in this category. The lower court in Chap-linsky declared that the statute involved therein did no more than prohibit face-to-face words likely to cause a breach of the peace by the addressee encompassing “ . . . other disorderly words, including profanity, obscenity and threats.” Cantwell v. State, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1939) was cited with approval by the Supreme Court in both Gooding and Chaplinsky. In Cantwell, the Supreme Court concluded that,
“One may, however, be guilty of the offense if he commit acts or make statements likely to provoke violence and disturbance of good order, even though no such eventuality be intended. Decisions to this effect are many, but examination discloses that, in practically all, the provocative language which was held to amount to a breach of the peace consisted oil profane, indecent, or abusive remarks directed to the person of the hearer. Resort to epithets or personal abuse is ?aot in any proper sense communication of information or opinion safeguarded by the Constitution, and its punishment as a criminal act would raise no question under that instrument.”
Section 847.04 as authoritatively construed herein is constitutional. Since the record before us does not indicate in what context the words “mother f-” were used, we cannot at this time determine whether they are incorporated within the language sought to be proscribed by this statute.
In addition to the allegations of vagueness, and overbreadth which were discussed by the trial court in its order of dismissal, appellee alleged in his motion to dismiss before the trial court that Section 843.01, Florida Statutes, F.S.A. — Resisting Arrest with Violence — was unconstitutionally vague and that the statutes upon which the information was based are viola-tive of the equal protection clause as applied and enforced. The trial court did not rule on the constitutionality vel non of Section 843.01, Florida Statutes, F.S.A. but rather found that since Section 847.04 is unconstitutional, the arrest of appellee was unlawful, and therefore Section 843.01 had not been violated. Appellee filed a cross assignment of error in the instant cause before this court alleging that the first count' (violation of Section 847.04) and second count (violation of Section 843.01) of the information filed against him should be dismissed as violative of due process and equal protection provisions of the Constitution. However, in his brief submitted to this Court, appellee not only fails to raise any argument in support of his violation of equal protection contention but also fails to make any mention whatsoever as to the constitutionality vel non of Section 843.01, Florida Statutes. It is the rule of this Court that such assignments of error as are not argued in the briefs will be deemed abandoned. Rule 3.7i, Florida Appellate *252 Rules, 32 F.S.A., see Redditt v. State of Florida, 84 So.2d 317 (Fla.1955).
Having' herein above held that Section 847.04, Florida Statutes, F.S.A. (Profane Language Statute) is constitutional, the order of the trial court is reversed, and this cause is remanded with instructions to reinstate the information filed against petitioner charging violation of Section 847.04, Florida Statutes, F.S.A. (1971), and charging violation of Section 843.01, Florida Statutes, F.S.A. (1971), and for further proceedings consistent herewith.
It is so ordered.
ADKINS, BOYD, McCAIN and DE-KLE, JJ., concur.
ERVIN, J., dissents with opinion.
CARLTON, C. J., dissents and concurs with ERVIN, J.

. Lovell v. Griffin, 363 U.S. 444, 450, 58 S.Ct. 666, 82 L.Ed. 949.

. Buck v. Gibbs, D.C., 34 F.Supp. 510, Mod., 313 U.S. 387, 61 S.Ct. 962, 85 L.Ed. 1416 (1940); Hunter v. Owens, 80 Fla. 812, 86 So. 839 (1920); Cragin v. Ocean & Lake Realty Co., 101 Fla. 1324, 133 So. 569, 135 So. 795 (1931), appeal dism., 286 U.S. 523, 52 S.Ct. 494, 76. L.Ed. 1267; Haworth v. Chapman, 113 Fla. 591, 152 So. 663 (1933); Hanson v. State, 56 So.2d 129 (Fla.1952); Overstreet v. Blum, 227 So.2d 197 (Fla.1969); Hancock v. Sapp, 225 So. 2d 411 (Fla.1969); Rich v. Ryals, 212 So. 2d 641 (Fla.1968); Tornillo v. The Miami Herald Publishing Co., supra.